STATE OF MISSOURI, Respondent, *v.* WILLIAM HUNDLEY, Appellant.

1. *Criminal law — Insanity to be determined like any other fact.*—In the trial of a criminal case the burden of establishing the insanity of the accused to the satisfaction of the jury rests upon the defense; but it is unnecessary that his insanity should be established beyond a reasonable doubt. All symptoms and tests of mental disease are purely matters of fact for the jury, and to be determined like other facts; and it is sufficient if the jury are reasonably satisfied from the weight or preponderance of evidence that the accused was insane at the time of the commission of the act. (State v. Klinger, *ante*, p. 224.) And an instruction which requires a *clear* preponderance of evidence to establish sanity introduces a qualification not warranted by law, and calculated to mislead.

2. *Criminal law — Temporary insanity caused by intoxication, responsibility for.*—Temporary insanity, produced immediately by intoxication, does not destroy responsibility for crime, where the patient, when sane and responsible, made himself voluntarily drunk; but, to be punishable, the crime must be the immediate result of the fit of intoxication, and while it lasts, and not the

result of insanity remotely occasioned by previous bad habits. In the latter case insanity is entitled to the same consideration as when arising from any other cause.

3. *Practice, criminal — Court can not instruct on weight and sufficiency of evidence.*—Under the present statute relating to practice in criminal cases (Wagn. Stat. 1106, § 30), it is error for a court to single out certain testimony in a cause and tell the jury that it is entitled to great or little weight. It is for the court to determine upon the legitimacy and appropriateness of the evidence, but the jury are the sole and exclusive judges of the credit and weight that is to be attached to it.

## *Appeal from Fifth District Court.*

*H. M. Vories*, with whom were *B. F. Loan & S. Woodson*, for appellant.

The seventh instruction given for the State was calculated to mislead the jury to the prejudice of the defendant, and was a comment or argument upon the evidence by the court, which is forbidden by the law, and trenches upon the province of the jury. (Schneer v. Lemp, 17 Mo. 142; 8 Mo. 268; Whitney v. The State, *id.* 165; Garesche v. Boyce, *id.* 228, 232; Emerson *et al.* v. Sturgeon, 18 Mo. 170; Rippy v. Friede, 26 Mo. 523; Scoggins v. Wilson *et al.*, 13 Mo. 80; The State v. Cushing, 29 Mo. 215; Chouquette v. Barada, 28 Mo. 491–8; Hine v. St. Louis Public Schools, 30 Mo. 166; *id.* 201; Speed v. Herrin, 4 Mo. 356, 361; Labeaume v. Dodier, 1 Mo. 441; Loehner *et al.* v. Home Mut. Ins. Co., 19 Mo. 628; McDermott v. Barnum, 19 Mo. 204; Baldwin v. The State, 12 Mo. 223; Commonwealth v. Rogers, 1 Lead. Crim. Cas. 87, and note following.) It is for the jury to say what weight they will give the evidence.

*H. B. Johnson*, Attorney-General, with *Chandler & Davis*, for respondent.

I. Every man is presumed to be sane. The *onus probandi* is on the defendant to show insanity by a preponderance of evidence (Baldwin v. State, 12 Mo. 223; State v. Huting, 21 Mo. 464; State v. Worrell, 25 Mo. 205; State v. Klinger, 43 Mo. 131), and no presumption of continued or permanent insanity

arises from proof of temporary insanity or *delirium tremens*. (Baldwin v. State, 12 Mo. 223 ; 1 Whart. Crim. Law, § 56 ; 1 Bish. Crim. Law, § 535 ; 4 Metc. 546.) Drunkenness is no excuse for crime. Neither can it be taken into consideration in determining the question of intent or malice. (State v. Cross, 27 Mo. 531 ; 1 Arch. Crim. Pr. & Pl. 31 ; 4 Blackst. Com., § 6 ; 1 Bish. Crim. Law, 490, 496, 498 ; People v. Robinson, 2 Pars. Crim. 235 ; People v. Hammill, *id.* 223 ; State v. Harlow, 21 Mo. 446 ; Shelton v. State, 14 Mo. 502 ; Hester v. State, 17 Ga. 146 ; Swan v. State, 4 Humph. 136.) And insanity, to excuse crime, must be of such a character and degree as to render the criminal incapable of distinguishing between right and wrong, in regard to the act charged to be criminal. (Baldwin v. State, 12 Mo. 231 ; Commonwealth v. Rogers, 7 Metc. 500 ; State v. Freeman, 4 Dew. 9 ; 1 Whart. Crim. Law, § 16.)

II. Where the law gives to certain evidence a peculiar legal significance, it is not a commentary on the evidence to declare such rule of law in relation thereto. (Baldwin v. State, 12 Mo. 232 ; State v. Schoenwald, 31 Mo. 149 ; State v. Watson, *id.* 361 ; State v. Martin, 28 Mo. 530 ; State v. Bryan, 34 Mo. 507; State v. Floyd, 15 Mo. 349 ; State v. Dunn, 18 Mo. 419 ; State v. Jennings, *id.*)

WAGNER, Judge, delivered the opinion of the court.

The defendant was indicted in the Circuit Court of Gentry county for murder in the first degree, in the killing of Wm. A. Boyer, and, on a change of venue to DeKalb county, he was convicted and sentenced to be executed. The killing was most clearly proved, and the defense was rested solely upon the ground of insanity. The only question presented for consideration is the propriety of certain instructions given by the court, of its own motion and at the request of the prosecution, and also certain instructions which were asked by the defendant and refused.

An objection is raised against the third instruction given at the instance of the State, because it told the jury that it devolved upon the defendant to show to their satisfaction, by a clear

State of Missouri v. Hundley.

preponderance of the testimony, that he was insane. The earlier decisions in this court announced the doctrine that a party relying on insanity as a defense should make it out to the satisfaction of the jury, and that he was not entitled to the benefit of a reasonable doubt as to his sanity. (State v. Huting, 21 Mo. 464 ; State v. McCoy, 34 Mo. 531.) But in the more recent case of The State v. Klinger, 43 Mo. 127, the question was again considered, and we held that the most reasonable rule was, that as the law presumed every person who had reached the age of discretion to be of sufficient capacity to be responsible for his crimes, the burden of establishing the insanity of the accused affirmatively to the satisfaction of the jury, on the trial of a criminal case, rested upon the defense ; but that it was not necessary that the defense should be established beyond a reasonable doubt ; it was sufficient if the jury were reasonably satisfied by the weight or preponderance of the evidence that the accused was insane at the time of the commission of the act. It seems to me that the court, in the present case, by requiring a clear preponderance of evidence, introduced a qualification that was not enunciated in the Klinger case, and which had an evident tendency, and was calculated, to mislead. Insanity is a simple question of fact, to be proved like any other fact, and any evidence which reasonably satisfies the jury that the accused was insane at the time the act was committed, should be deemed sufficient.

After taking into consideration and overcoming the presumption of sanity, it is not perceived why any higher degree of evidence or any greater amount of proof should be required to prove the fact of insanity than any other question which may be raised and submitted upon the trial of a cause. The correct doctrine is that all symptoms and all tests of mental disease are purely matters of fact, to be determined by the jury ; and that evidence which reasonably satisfies a jury that the disease exists, and which would warrant and induce a verdict upon any other issue, ought to be considered sufficient. From the instruction, the jury might have well inferred that a preponderance, or what would reasonably have satisfied them, was not enough, but that something more was necessary.

27—VOL. XLVI.

The fourth instruction, given at the request of the State, and the third instruction, given by the court of its own motion, may be considered together. The first of the two, in substance, declared that the voluntary drunkenness of the defendant, so far as the same was shown by the evidence to have existed at the time of the homicide, was no mitigation of the crime charged; and if the jury believed from the evidence that the defendant was laboring under a temporary frenzy or insanity at the time of the killing of Boyer, which was then and there the immediate result of intoxicating liquors or narcotics, he was equally guilty under the law as if he had been sober or sane at the time of the killing. The latter instruction, which was given directly by the court, told the jury that if they were satisfied, from the weight or preponderance of the whole evidence, that at the time the defendant killed Boyer he was so insane as not to know right from wrong, and as not to know that the act he was committing was wrong at the time of its commission, and that he was so far deprived of will at the time of the commission of the act as not to possess the power of choosing between right and wrong in regard to the act, and that his insanity was not the result of fits of intoxication, but was occasioned by previous habits of intoxication and the long use of narcotics, then they should find the defendant not guilty.

It is well settled that drunkenness does not mitigate a crime. Any other principle would be destruction to the peace and safety of society. Every murderer would drink to shelter his intended guilt. There would be an end of convictions for homicide if drunkenness avoided responsibility. As it is, most of the premeditated murders are committed under the stimulus of liquor. When the guilty purpose is first sedately conceived, most men fortify themselves for the scene of blood by the use of intoxicating drinks. If, therefore, drunkenness imparted irresponsibility, there would be no convictions. If the assassin would not take liquor to strengthen his nerves, he would to evade the penalty of his crime. (Wh. & St. Med. Jur., § 67; 1 Wh. Cr. Law, § 38; State v. Cross, 27 Mo. 332.)

Temporary insanity, produced immediately by intoxication,

does not destroy responsibility where the patient, when sane and responsible, made himself voluntarily drunk. Sir Edward Coke lays down the common-law rule to be, that, " as for a drunkard who is *voluntarius dæmon,* he hath, as has been said, no privilege thereby; but what hurt or ill soever he doeth, his drunkenness doth aggravate it, *omne crimen ebrietas et incendit et detegit.*" (Co. Litt. 247, *a.*) And although it is doubtful whether it can be said that drunkenness aggravates a crime in a judicial sense, yet it is unquestioned that it forms no defense to the fact of guilt.

Thus Judge Story, after noticing that insanity, as a general rule, produces irresponsibility, went on to say : "An exception is where the crime is committed by a party while in a fit of intoxication, the law not permitting a man to avail himself of the excuse of his own gross vice and misconduct to shelter himself from the legal consequences of such crime." (United States v. Drew, 5 Mason, 28.) Sir Matthew Hale, in his "History of the Pleas of the Crown," written nearly two hundred years ago, says : " The third kind of *dementia* is that which is *dementia affectata,* namely, drunkenness. This vice doth deprive men of the use of reason, and puts many men into a perfect but temporary phrenzy ; and therefore, according to some civilians, such a person committing homicide shall not be punished simply for the crime of homicide, but shall suffer for his drunkenness, answerable to the nature of the crime occasioned thereby ; so that yet the primal cause of the punishment is rather the drunkenness than the crime committed in it. But by the laws of England such a person shall have no privilege by his voluntarily contracted madness, but shall have the same judgment as if he were in his right senses." He then states two exceptions to the rule : one where intoxication is without fault on his part, as where it is caused by drugs administered by an unskillful physician ; and the other where indulgence in habits of intemperance has produced permanent mental disease, which he calls "*fixed phrenzy.*" (1 Hale, P. C., 32.)

The doctrine and the distinction laid down by Hale have been generally followed by the English courts and in this country.

The United States v. Drew, *supra*, and The United States v. McGlue, 1 Curtis' C. C. 1, will be found to maintain the principle, upon the authority of Judge Story and Judge Curtis, of the Supreme Court of the United States. These last two cases not only state the general principle, but confirm the distinction announced by Hale, that where mental disease, or, as he terms it, a "*fixed phrenzy*," is shown to be the result of drunkenness, it is entitled to the same consideration as insanity arising from any other cause. The first of them was a case of *delirium tremens*, and Judge Story directed an acquittal on that account.

In the other the evidence left it doubtful whether the furious madness exhibited by the prisoner was the result of present intoxication or of delirium supervening upon long habits of indulgence. Upon this state of the evidence Judge Curtis stated the rule and the exceptions with remarkable clearness and force.

Prof. Greenleaf, whose general accuracy in the statement of legal principles is unquestioned, says that "in criminal cases, though insanity, as we have just seen, is ordinarily an excuse, yet an exception to this rule is where the crime is committed by a party while in a fit of intoxication; the law not permitting a man to avail himself of the excuse of his own gross vice and misconduct to shelter himself from the legal consequences of such crime. But the crime, to be within the exception, and therefore punishable, must take place and be the immediate result of the fit of intoxication, and while it lasts, and not the result of insanity remotely occasioned by previous habits of gross indulgence in spirituous liquors. The law looks to the immediate and not the remote cause — to the actual state of the party, and not to the causes which remotely produced it." (2 Greenl. Ev., § 374.)

The instruction given at the instance of the prosecution told the jury that if they believed from the evidence that the defendant was laboring under a temporary frenzy or insanity at the time of the killing of Boyer, which was then and there the immediate result of intoxicating liquors or narcotics, he was guilty. This instruction was unobjectionable, for, as we have already seen, temporary insanity produced immediately by

intoxication does not destroy responsibility where the accused, when sane and responsible, made himself voluntarily drunk. But the crime, to be punishable under such circumstances, must take place and be the immediate result of a fit of intoxication, and while it lasts, and not the result of insanity remotely occasioned by previous bad habits.

The subsequent instruction, given by the court of its own motion, was unguarded, open to misconstruction, and liable to mislead. It declared that if the defendant was so far deprived of will at the time of the commission of the act as not to possess the power of choosing between right and wrong, and if his insanity was not the result of fits of intoxication, but was occasioned by previous habits of intoxication and the long use of narcotics, then they should find him not guilty.

The distinction that the act must take place and be the immediate result of the fit of intoxication, and while it lasts, in order to render the accused responsible, is here utterly ignored. The insanity might have been found to be permanent, and still the result of fits of intoxication; so that it actually existed, and did not come within the exception to the rule rendering the crime punishable, it could make no difference what it resulted from. The two instructions are inconsistent and contradictory. The one laid down the law correctly, the other impaired its force, and, coming as it did directly from the court, was calculated to operate injuriously against the defendant.

The seventh instruction, upon which error is predicated, is as follows: " The testimony and opinions of the medical witnesses given in this case should be received by the jury with caution, and are entitled to but little weight, unless sustained by reasons and facts that admit of no misconstruction; and said opinions and testimony are not binding on you against your own judgment, for on you alone rests the responsibility of a correct verdict." It is objected that this instruction is a comment on the evidence, and in direct conflict with the provisions of the statute. The instruction might find countenance and support where the old system of practice prevails, and where it is permissible for the court to make comments on the evidence, and instruct the

jury as to its sufficiency and weight. But under our statute the whole rule is changed, and comments by the court are entirely forbidden. (2 Wagn. Stat. 1106, § 30.) Since the adoption of this clause in the statute the ruling has been uniform, and there is hardly a volume of the reports in which it is not laid down that it is error for a court to instruct a jury upon the weight and sufficiency of the evidence. It is for the court to determine upon the legitimacy and appropriateness of the evidence, but the jury are the sole and exclusive judges of the credit and weight that is to be attached to it. For a court to single out certain testimony in a cause, and tell the jury that it is entitled to either great or little weight, is contrary to the statutory provision on the subject.

The testimony of medical witnesses, like any other testimony, should be taken into the account by the jury, and they should give it just such weight as they may think it deserves. Whilst the opinions of quacks, mountebanks, and pretenders are entitled to little or no consideration, the opinions of persons of great experience, skill, fidelity, and correctness of judgment, deserve and should receive attention and respect. In speaking on this subject, the late Chief Justice Shaw said: "The opinion of a medical man of small experience, or of one who has crude and visionary notions, or who has some favorite theory to support, is entitled to very little consideration. The value of such testimony will depend mainly upon the experience, fidelity, and impartiality of the witness who gives it." (Commonwealth v. Rogers, 7 Metc. 500.)

In the examination of the witnesses it is the privilege and duty of the counsel, for the enlightenment of the jury, to draw forth the capabilities, fitness, and experience of those who undertake to give medical testimony. But where these tests are applied, and the court decides that the evidence is competent, the jury then are the exclusive judges, and are not to be controlled in their determination by the advice and instructions of anybody. An intelligent jury, after hearing the witnesses and observing their respective capacities, will not be slow in coming to a correct conclusion and awarding such consideration as the merits or

demerits of the evidence may deserve. The instruction was an invasion of the province of the jury, and, I think, clearly wrong.

There is no attempt to deny the killing in this case. The only defense set up to excuse or palliate the deed of violence and wrong, is insanity. This question is at all times difficult to deal with, and it would be wrong to punish a person who was so unfortunate as to be unaccountable by reason of a diseased and disordered mind. On the other hand, there is too much foundation for the remark of Mr. Baron Gurney, on the trial of the case of Rex v. Reynolds, that "the defense of insanity has lately grown to a fearful hight, and the security of the public requires that it should be closely watched." Recent examples have shown that guilty criminals have escaped merited punishment on this assumed plea, and have been turned loose, to the great detriment and outrage of justice.

The interests of society and the welfare of the community require that justice should be faithfully and rigorously administered. On the one hand, care should be taken that no one be punished whose afflictions render him irresponsible; on the other, the defense of insanity, which is easily simulated, about which there are many crude and perverted notions, and which is usually resorted to when all other defenses fail, should be scanned with the severest scrutiny. The court, we think, committed error in regard to the instructions above noticed in this opinion; otherwise we have found nothing calling for special comment or revision.

With the concurrence of the other judges, the judgment will be reversed and the cause remanded for a new trial.