Thomas G. EDWARDS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17704.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 26, 1963.

Decided March 12, 1964.

Petition for Rehearing en Banc
Denied May 7, 1964.

Mr. Armin U. Kuder, Washington, D.
C. (appointed by this court) for appellant.

Mr. Max Frescoln, Asst. U. S. Atty.,
with whom Messrs. David C. Acheson, U.
S. Atty., Frank Q. Nebeker and Harold
H. Titus, Asst. U. S. Attys., were on the
brief, for appellee.

Before EDGERTON, Senior Circuit Judge,
and WASHINGTON and BASTIAN, Circuit
Judges.

WASHINGTON, Circuit Judge.

This case raises questions concerning
the proper conduct of a trial in the District Court of a juvenile accused of crime,
where the Juvenile Court has waived its
jurisdiction over him pursuant to the
provisions of D.C.Code § 11–914. Principally involved are the scope and mean-

ing of our decision in Harling v. United States, 111 U.S.App.D.C. 174, 295 F.2d 161 (*en banc* 1961), and our recent holding in Smith and Bowden v. United States, 117 U.S.App.D.C. ——, 324 F.2d 879 (1963).

At the trial of the present case it appeared that on the afternoon of July 31, 1962, three boys entered the offices of Dr. William F. Nelson in Northeast Washington and forcibly robbed him of his watch and wallet. After their escape, he called the police. At some later time, not specified, appellant Edwards and one Anthony Gross were apprehended and taken to the Fourteenth Precinct station. While there they confessed their participation in the robbery, and told the police that one Preston Berry was the third boy involved. The police brought in Berry, and asked Dr. Nelson to come to the station. He did so, identified the boys, and was given back his money and property. All three boys later appeared before the Juvenile Court, again on a date not specified. That court placed Berry on probation, and waived its jurisdiction over Edwards and Gross (who were over sixteen years of age). See D.C.Code § 11–914. The latter two were indicted for robbery by force and violence, D.C.Code § 22–2901, and were tried in the District Court under its usual procedures.

The prosecution's witnesses were Dr. Nelson, the complainant, and Berry, the third boy. Appellant Edwards objected to Berry's appearance as a witness, on the ground that his identity was learned "as a result of a confession obtained from one of the defendants while the defendant was in the custody of the Juvenile Court." Objection was made on somewhat similar grounds to the testimony of Dr. Nelson.[1] Counsel cited and relied on our decision in Harling v. United States, supra. The objections were overruled.

Dr. Nelson identified the defendants and Berry in the courtroom, and described the robbery. Berry was then put on the stand by the prosecution. At first he attempted to exculpate the defendants. The prosecutor claimed surprise and asked permission to cross-examine Berry. This was granted. The prosecutor thereupon read Berry's testimony before the grand jury inculpating Edwards and Gross. Berry then stated that his testimony before the grand jury was the truth. The jury found the defendants guilty. Edwards was sentenced to imprisonment under the provisions of the Federal Youth Corrections Act, 18 U.S.C. § 5010(c), and this appeal followed.[2] The question posed is whether our decision in the *Harling* case required the District Court to exclude the testimony of Dr. Nelson, the complaining witness, and that of Berry.

The *Harling* case bars the Government from using against an accused in a criminal trial a confession or admission officially obtained from him when he was a juvenile detained under the auspices of the Juvenile Court, where the latter court has subsequently waived its jurisdiction and transferred the accused for trial to the District Court. Our ruling in *Harling* resulted from the special practices which follow the apprehension of a juvenile. He may be held in custody by the juvenile authorities—and is available to investigating officers—for five days before any formal action need be taken. There is no duty to take him before a magistrate, and no responsibility to inform him of his rights. He is not booked. The statutory intent is to establish a non-punitive, non-criminal atmosphere. *Harling* is a simple recognition that it would be unfair to the individual juvenile and a mockery of the juvenile system to allow unrestricted use of evi-

---

1. The complaining witness had identified the defendants at the police station, after being called there by the police. Appellant contended that Dr. Nelson would not have been able to identify the three juveniles in the courtroom as those who committed the robbery had he not been (al-

legedly) advised by the police, prior to the confrontation at the station, that they had already confessed and had produced the stolen money and property.

2. Gross did not appeal his conviction.

dence, gathered through such procedures, in the adult court. Thus, the *Harling* rule has two bases: principles of "fundamental fairness" to the juvenile, and preservation of the integrity of the juvenile system, lest it become a mere adjunct to the regular criminal processes.

The purpose of *Harling* is not to deter improper police conduct, since the interrogation by the officers of juveniles being detained is usually not improper. Evidence obtained through juvenile custody thus is not necessarily "fruit of the poisonous tree." Cf. Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939). But fruit of an untainted tree may become poisonous when improperly used. The issue whether particular evidence should be excluded at an adult trial because it was directly or indirectly obtained through juvenile procedures may often be comparable to the issues which arise under the Mallory [3] or Fourth Amendment exclusionary rules. In applying these rules, courts must in appropriate cases scrutinize the causal relationships involved to determine whether the evidence resulted from "exploitation" of the "primary illegality." Wong Sun v. United States, 371 U. S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In *Harling* cases the question is much the same: Was the evidence sufficiently divorced from the juvenile procedures to "dissipate the taint," Nardone v. United States, supra, 308 U.S. at 341, 60 S.Ct. 266, 84 L.Ed. 307, and permit use of the evidence in the District Court.

■■ Applying these considerations to the testimony of the complaining witness, Dr. Nelson, we are of the view that the District Court did not err when it permitted him to testify concerning the facts of the crime, and to identify the defendants in open court as the perpetrators of the robbery and the accompanying assault on his person. See Payne v. United States, 111 U.S.App.D.C. 94, 294 F.2d 723, cert. denied, 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83 (1961).

It is important to note that the confessions and admissions the defendants made to the police and to Dr. Nelson at the police station were properly excluded by the trial judge, and that Dr. Nelson was cautioned out of the hearing of the jury that he should not mention in any way the fact that he had seen or interviewed the defendants there. He obeyed this caution. We think that the court's action in this regard satisfied the requirements of the *Harling* case, while not depriving the complaining witness of the opportunity of stating his grievances to the court and jury.

As to the testimony of Berry, the accomplice and eyewitness, the present case bears some resemblance to the recent case of Smith and Bowden v. United States, supra.[4] There, Smith, an adult, and Bowden, a juvenile, confessed while they were being detained by the police, and named an eyewitness to the crime, Holman. The confessions were excluded at trial under the *Mallory* and *Harling* rules, but Holman's testimony was admitted and doubtless played a major part in convicting the defendants. On appeal, they claimed that the Holman testimony should have been excluded as the fruit of their inadmissible confessions. The majority of the court affirmed the convictions, finding that "the relationship between the inadmissible confessions and Holman's testimony in the District Court months later is so attenuated that there is no rational basis for excluding it." 324 F.2d at 881.

In the present case the relationship between Edwards' inadmissible confession and Berry's testimony in the District Court may properly be regarded as similarly attenuated. Holman had denied knowledge of the crime on several occasions prior to the trial. The story given by Berry to the police and repeated to the grand jury was not the story which Berry gave in the first instance in the courtroom—a story exculpating Edwards

---

3. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

4. One panel of this court does not ordinarily disregard a recent decision of another panel on the same point.

and Gross. Only when confronted with an earlier statement did Berry recant and give testimony implicating Edwards and Gross.[5] In each case, "will, perception, memory and volition"—qualities of the "individual human personality"—as explained in the majority's opinion in the *Smith-Bowden* case and again in McLindon v. United States, 117 U.S.App.D.C. ——, 329 F.2d 238, 241 (1964)—played a role in producing the testimony adverse to the accused.

In commenting on the *Smith-Bowden* case in McLindon v. United States, supra, we said:

"We do not read our decision in Smith v. United States and Bowden v. United States, 117 U.S.App.D.C. ——, 324 F.2d 879 (1963), as holding that testimony may never be excluded, as that would contradict the well-established rule forbidding testimony as to visual and aural observations during an unlawful search, seizure, detention or wiretap. See, for example, Williams v. United States, 105 U.S.App.D.C. 41, 263 F. 2d 487 (1959). And compare Wong Sun v. United States, supra, 371 U.S. at 486 [83 S.Ct. at 416, 9 L.Ed.2d 441]. The *Smith and Bowden* decision involved an attempt to suppress the testimony of one Holman, an eyewitness to a brutal murder, whose identity was revealed by the defendants while they were being held in police custody, one of them in violation of Rule 5(a), Fed.R.Crim.P. '[W]hen initially located Holman gave no information adverse to appellants * * *.' 324 F.2d at 881, n. 2. At the coroner's inquest and before the grand jury the witness again refused to give such testimony. '[O]nly after reflection and the interaction of * * * faculties of human personality ["will, perception, memory, and volition," *id.* at 881] did Holman eventually relate to the jury the events of the night

of the killing.' *Id.* at 881, n. 2. According to Holman's testimony, he changed his mind because 'I used to think about it at night all the time. * * * Because I kept thinking about the man, the man dead.' Record at 629.

"The opinion holds that—

" 'The proffer of a living witness is not to be *mechanically equated* with the proffer of inanimate evidentiary objects illegally seized. The fact that the name of a potential witness is disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give.' 324 F.2d at 881. (Emphasis supplied.)

"We agree. In each case the court must determine how great a part the particular manifestation of 'individual human personality' played in the ultimate receipt of the testimony in question. Indications in the record that mere knowledge of the witness' identity would not inevitably guarantee that his testimony would be favorable to the prosecution; that the witness might eventually have voluntarily gone to the police even without their knowing his identity; that his testimony has remained unchanged from the start—all are relevant factors to be considered in determining the final outcome. See, generally, Wong Sun v. United States, supra, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), citing Maguire, Evidence of Guilt 221 (1959); Payne v. United States, 111 U.S.App.D.C. 94, 294 F.2d 723, cert. denied, 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83 (1961)."

Although Berry finally told the same story on the witness stand in the present

5. While this was not necessarily the controlling factor, it illustrated that Holman, like Berry in the present case, was an independent source; only the witness was in control of the testimony he would give.

case that he had told when first arrested, and Holman in the *Smith and Bowden* case did not, we think there is enough similarity between the two cases so that we should affirm the present conviction.

Affirmed.