STATE of Missouri, Respondent,

v.

Joseph Franz ARBEITER, Appellant.

No. 54611.

Supreme Court of Missouri,
Division No. 1.

Jan. 12, 1970.

Motion for Rehearing or to Transfer to
Court En Banc Denied
Feb. 9, 1970.

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.

John H. Haley, Jr., James T. Williamson, James P. Finnegan, Jr., St. Louis, for appellant; Haley, Fredrickson, Stubbs & Williamson, London & Greenberg, Burton M. Greenberg, St. Louis, of counsel.

WELBORN, Commissioner.

Appeal from 40-year sentence on jury verdict finding appellant Joseph Franz Arbeiter guilty of murder in the second degree.

Appellant was originally charged by indictment in the St. Louis Circuit Court with first degree murder for the stabbing death of Nancy Zanone in December, 1963. A sentence of life imprisonment on that charge was reversed in State v. Arbeiter, Mo., 408 S.W.2d 26. The basis of the reversal was the admission into evidence at the trial of statements made by the defendant to police officers while the defendant was in police custody. Such statements were held inadmissible because the police had failed to comply with the requirements of the Juvenile Code that the defendant, then 15 years of age and therefore subject to such code, be taken "immediately and directly before the juvenile court or delivered to the juvenile officer * * *." Section 211.061, RSMo 1959, V.A.M.S.

After remand of the cause, the circuit attorney moved for the issuance of a subpoena duces tecum to the juvenile court for the production of the records of that court pertaining to the defendant. Over objection of defendant, the subpoena was issued and the trial court's order became the subject of a provisional writ of prohibition issued by the court en banc. The petition for the writ alleged, insofar as here pertinent, that the records of the juvenile court are confidential and privileged, under the Juvenile Code (§§ 211.011–211.431, RSMo 1959, V.A.M.S.), and that production of the records in response to the subpoena would violate statutory provisions designed to protect the confidential status of such records, particularly § 211.271, as well as constitutional guaranties against self-incrimination, and to due process and right of counsel.

In State ex rel. Arbeiter v. Reagan, 427 S.W.2d 371, the court en banc quashed the provisional writ in prohibition. Following that decision, and over the continuing objection of defendant, the records of the juvenile court were produced and inspected by counsel for the state and the defendant. The state made copies of the record.

Following such inspection, the state indorsed the name of Donald R. Jones, Juvenile Division, St. Louis Circuit Court, as a witness on the indictment.

The defendant filed a motion to suppress (1) all records of the juvenile court pertaining to the defendant and (2) all testimony as to statements made by defendant to anyone acting on behalf of the juvenile court. The grounds of the motion which constitute the grounds of error now asserted will be discussed hereafter. Following a hearing, the motion to suppress was overruled.

While the motion to suppress was pending, the state, by leave of court, filed an information charging the defendant with murder in the second degree, in lieu of the indictment charging first degree murder.

When the trial began, defendant renewed his objection to the use of any statements taken by juvenile officials from defendant. In the course of the trial, a hearing was held outside the presence of the jury on the issue of the voluntariness of any such statement. The trial court found specifically that a statement made by defendant to Juvenile Officer Donald Jones was voluntary and not rendered inadmissible by the provisions of the Juvenile Code or constitutional objections raised by defendant. Jones was permitted to testify and his testimony is the basis of error urged on this appeal. The testimony of Jones was the only evidence offered connecting defendant with the offense charged.

The state's evidence showed that defendant was taken into custody of S. Louis police officers at approximately 11:00 A.M., December 3, 1963. He remained in police custody until around 9:30 P.M. on that date, when he was delivered by police officers to the intake officer of the juvenile court. The defendant was placed in the juvenile detention facility overnight. Juvenile Officer Jones was assigned to the case and he saw the defendant for the first time on the afternoon of December 4 in the interview room at the juvenile detention facility.

Jones testified:

"As soon as the matron opened the door I walked in and I said, 'Hi, Joe. My name is Mr. Jones. I am going to be your Juvenile Officer.' Joe answered in a low voice, 'Hi.' I asked, simply to clarify both in his mind and my mind, I asked him if he knew why he was being detained, and he said in a very low voice, 'Yes.' And I said, 'Why, Joe?' And Joe said, 'Cause I hurt that woman.'

"He didn't go on, so I pursued it further, and I said, 'Joe, what did you do to that lady?'

\*   \*   \*   \*   \*   \*

"Joe said, and it's not too clear in my mind which he said, but he said either, 'I cut her,' or 'I stabbed her.' I paused

and I said, 'Joe, do you know that the lady died?' And he said, 'Yes,' and began crying."

He also testified that defendant made a further statement which gave details of the encounter with the woman, defendant's stabbing her and his hiding the knife which he used.

Appellant's objection to this testimony is based upon both statutory and constitutional grounds. We consider the statutory grounds first. That attack is based upon paragraph 3 of § 211.271, RSMo 1959, V.A.M.S., which at the time of defendant's trial provided:

"Evidence given in cases under sections 211.011 to 211.431 is not lawful or proper evidence against the child for any purpose whatever in a civil, criminal or other proceeding except in subsequent cases under sections 211.011 to 211.431 [the Juvenile Code]."

Appellant contends that this provision prohibited the use in the criminal trial of the statements to Jones because Jones obtained the statements as a deputy juvenile officer, incorporated them in a "Social Investigation" report which was submitted to the judge of the juvenile court and admitted in evidence at the hearing on December 26, 1963, following which the judge concluded that the defendant was not a proper person to be dealt with under the Juvenile Code.

The state's position is: "(1) voluntary statements by Arbeiter, in the presence of Jones, were not made before a juvenile judge or as testimony in a juvenile case, but were part of the social investigation undertaken by Juvenile Officer Jones, and hence, not evidence in a juvenile case; (2) said admissions were not evidence in a juvenile case, because the juvenile court did not accept the case by disposing of the issue of guilt or innocence, but merely certified appellant to be tried in the criminal courts as an adult."

The state offers no authority in support of these propositions, stating merely: "Unfortunately, there are no Missouri cases which define the scope of 'evidence given in cases under sections 211.011 to 211.431.'" Nor does the state's brief refer to the numerous authorities relied upon by appellant in support of his position. Obviously, those cases are primarily from other jurisdictions and did not deal with statutes precisely like that of Missouri. However, we cannot ignore the persuasive effect of such authority and therefore must consider appellant's cited cases in some detail.

Appellant does cite the Missouri case of State v. Cox, 263 S.W. 215, in which, under a provision of the former juvenile law (§ 2591, RSMo 1919, § 211.010, RSMo 1949) similar to that here relied upon, the court held that testimony given by a person the subject of a juvenile court proceeding could not be used to impeach that person's testimony in a criminal case. Unquestionably that case involved the use of evidence presented to the juvenile court in the form of oral testimony of the juvenile and the application of the statute was clear. The other Missouri case cited, State v. Coffman, 360 Mo. 782, 230 S.W.2d 761, involved attempted use of disposition of a juvenile court proceeding to impeach the juvenile as a witness in a related criminal proceeding. This again was directly in face of the statutory prohibition against the use of the "disposition" of a juvenile child as evidence against the child. § 211.-010, RSMo 1949, supra.

A leading case in support of appellant's position here is Harling v. United States, 111 U.S.App.D.C. 174, 295 F.2d 161, decided in 1961 by the United States Court of Appeals for the District of Columbia. In that case, the court held that principles of "fundamental fairness" precluded the use in a criminal proceeding of "damaging oral statements made by appellant while in police custody when he was seventeen years old and before the Juvenile Court had waived its 'original and exclusive jurisdic-

tion.'" 295 F.2d 161. In so holding, the court stated (295 F.2d 163–164):

"It would offend these principles to allow admissions made by the child in the non-criminal and non-punitive setting of juvenile proceedings to be used later for the purpose of securing his criminal conviction and punishment. Such a practice would be tantamount to a breach of faith with the child, since he cannot be charged with knowledge of either his privilege against self-incrimination or the Juvenile Court's power to waive its jurisdiction and subject him to criminal penalties. Moreover, if admissions obtained in juvenile proceedings *before* waiver of jurisdiction may be introduced in an adult proceeding *after* waiver, the juvenile proceedings are made to serve as an adjunct to and part of the adult criminal process. This would destroy the Juvenile Court's *parens patriae* relation to the child and would violate the non-criminal philosophy which underlies the Juvenile Court Act.

"In United States v. Dickerson, 1959, 106 U.S.App.D.C. 221, 225, 271 F.2d 487, 491, we strongly intimated that any 'departure in practice from that philosophy would require the application of procedural safeguards observed in criminal proceedings.' These strict safeguards, however, are wholly inappropriate for the flexible and informal procedures of the Juvenile Court which are essential to its *parens patriae* function. To avoid impairment of this function, the juvenile proceeding must be insulated from the adult proceeding. This requires that admissions by a juvenile in connection with the non-criminal proceeding be excluded from evidence in the criminal proceeding."

In State v. Maloney, 102 Ariz. 495, 433 P.2d 625, the Arizona Supreme Court followed Harling. An Arizona statute was also invoked. 2 A.R.S. § 8–228, subsec. B. Similar to the Missouri statute here involved, its terms were:

"The disposition of a child or of evidence given in the juvenile court shall not be admissible as evidence against the child in any proceeding in another court, nor shall such disposition or evidence disqualify a child in a civil service application, examination or appointment."

The defendant, Maloney, was charged with murder of his mother and stepfather. Maloney was just under 16 years of age at the time of the acts charged. After he had been apprehended by police, he was placed in custody of the juvenile court. While under the jurisdiction of that court, he was questioned by a police officer in the presence of a juvenile probation officer. The defendant was advised before the questioning of his right to counsel and to remain silent. (No such advice was given defendant in this case prior to Jones's interrogation. There was no practice, in December, 1963, of so advising juveniles in the St. Louis Juvenile Court.) In discussing the Arizona statute, above quoted, the court stated (433 P.2d 628):

"An interpretation of this statute requires an understanding of the procedures employed by the juvenile court. Crucial to our discussion is the manner in which that court gathers evidence. For example, one of the most valuable tools of the juvenile court is the prehearing report. It usually includes a summary of the situation, a history of the family and the child, and a recommendation of disposition. Oftentimes it will include confidential information from people who know the child. See Molloy, Juvenile Court—A Labyrinth of Confusion for the Lawyer, 4 Ariz.L. Rev. 1, 9 (1962).

"As we see it, an inculpatory statement obtained by the police while the child is within the jurisdiction of the juvenile court is part of the evidence gathering function of that court. The fact that such evidence was never offered to the juvenile court in a hearing to adjudicate whether the child is delinquent does not alter the fact that such an inculpatory statement is evidence. In addition, as we noted above, the court in Harling impliedly stated that

admissions obtained by the police while the child is within the jurisdiction of the juvenile court is evidence gathered in the 'juvenile proceedings.' "

The court concluded (433 P.2d 629):

"One of the underlying policies of the Juvenile Court Act is to separate the juvenile process from the criminal procedure. Such a policy is necessary to enhance the rehabilitative program of the juvenile court. We hold as a matter of 'fundamental fairness', and because § 8–228, subsec. B, 2 A.R.S., prohibits the use of such evidence, that inculpatory statements made by a child while under the jurisdiction of the juvenile court and before that court waives its jurisdiction, cannot later be used against the child in a subsequent criminal proceeding unless he and his parents are advised before questioning not only of the child's right to counsel and privilege against self-incrimination, but also of the possibility that he may be remanded to be tried as an adult."

The Arizona Supreme Court followed its Maloney holding in State v. Cano and Lopez, 103 Ariz. 37, 436 P.2d 586.

The last three cited cases all involved statements to police officers while a juvenile was within the jurisdiction of the juvenile court. Some jurisdictions have rejected the Harling doctrine in such situations. One such case of interest is State v. Gullings, 244 Or. 173, 416 P.2d 311. The Oregon Supreme Court rejected Harling, adopting instead the rule that, federal Fifth and Sixth Amendment rights having been granted, a statement by a juvenile to a police officer while in custody of the juvenile court may be admitted in criminal proceedings against the juvenile "so long as it is made clear to the juvenile that criminal responsibility can result and that the questioning authorities are not operating as his friends but as his adversaries." 416 P.2d 313. In reaching this conclusion, the court dwelt at length on the difference between the position of a police officer and a juvenile officer who questions the juvenile in such circumstances. Speaking of the role of the latter, the court stated (416 P.2d 312–314):

"The *parens patriae* theory of juvenile treatment * * * is necessarily based upon a close relationship between the child and the representatives of the court. The desired result is the child's trust and confidence in the representatives of the court and a full disclosure by the child to them. Until such a condition exists, the chances for successful and meaningful treatment on a *parens patriae* basis are minimal. The essence of such treatment is the establishment of an informal nonadversary atmosphere which is the antithesis of adult criminal procedure.

*     *     *     *     *     *

"It would be inconsistent to allow admissions made by the child in a noncriminal, nonpunitive and nonadversary trustful *parens patriae* atmosphere to be used to secure criminal sanctions against him.

*     *     *     *     *     *

"If information secured by juvenile authorities is indiscriminately used as a basis for imposing criminal responsibility, juvenile courts cannot legitimately complain if traditional criminal constitutional standards are required of them in all their proceedings. Such a result would naturally be self-defeating since there is little room for the *parens patriae* relationship to operate within the narrow confines of standards evolved for use in the adversary criminal setting.

*     *     *     *     *     *

"Presuming that federal constitutional Fifth and Sixth Amendment rights are granted, we believe that an absolute prohibition is not required so long as it is made clear to the juvenile that criminal responsibility can result and that the questioning authorities are not operating as his friends but as his adversaries. In the present case we believe this was made abundantly clear to the defendant. The officer had been adequately trained and apparently was aware in advance that there

was a possibility of a remand. His testimony indicated he was careful and specific in informing the defendant of the possible consequences.

"We do not believe the two factors which were the concern of the court in *Harling* and *Edwards* supra, (Edwards v. United States, 117 U.S.App.D.C. 383, 330 F.2d 849), require prohibiting the use in adult proceedings of all information secured by police before remand. No 'principles of fundamental fairness' are offended when the information is secured in a setting that is so patently adversarial as to be understood by the child. The *parens patriae* relationship does not exist between police and child but between court and child. Police are in the business of solving transgressions against the welfare of society and the apprehension of those who are responsible therefor. They are not engaged in the rehabilitation of the child and the treatment of his emotional and family problems where the free exchange of information and a close relationship is so important. The use of information secured by police will not, in our opinion, tend to make more difficult the establishment of a close relationship between juvenile workers and the child.

"Nor is the integrity of the juvenile court threatened so long as constitutional due process is required whenever the police secure information which is subsequently used against the child in an adult prosecution. If information has been secured from a juvenile under the court's jurisdiction without regard for constitutional safeguards and such information is later used in an adult prosecution, the integrity of the juvenile court may be threatened. The juvenile court would then be nothing more than an adjunct to unlawful police practices."

We do note that the Oregon statute (O.R.S. 419.567(3)) prohibited the use in criminal cases of "information appearing in the record of the case or in reports or other material relating to the child's history or prognosis * * *."

In People v. Hester, 39 Ill.2d 489, 237 N.E.2d 466, the Illinois court found Harling inapplicable under the Illinois statute and noted: "The rationale of *Harling* has also been questioned and rejected by certain sister States (State v. Gullings, 244 Or. 173, 416 P.2d 311; People v. Lara, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202) because the *parens patriae* relationship cannot be said to exist between the police and the child, *but only between the minor and the court.*" 237 N.E.2d 478.

California has rejected the *Harling* rule. In People v. Magee, 217 Cal.App.2d 443, 31 Cal.Rptr. 658, the court stated: "The states of the union do not necessarily have to follow all federal rules." 31 Cal.Rptr. 666. See also People v. Lara, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202.

In State v. Francois, 197 So.2d 492, the Florida Supreme Court quashed an opinion of the District Court of Appeals in the same case (Walker v. State, 188 So.2d 7) which had applied the Harling doctrine.

■ Of course, the fundamental question presented here is not whether we should accept Harling, but is whether our statute has, in effect, prescribed a rule similar to that laid down in Harling. In construing § 211.271(3), we reject the state's position that there was no evidence presented in a "case" under the Juvenile Code, because the juvenile court declined to accept the "case" under the Juvenile Code, but merely certified the matter to the criminal courts. The trial court appears to have based its ruling, in part, on such theory. In our opinion, the proceeding in which the juvenile court decided that appellant should be tried as an adult was a "case" within the meaning of that term as used in § 211.271 (3). By § 211.131, subd. 3, the jurisdiction of the juvenile court attached from the time that appellant was taken into custody. A petition was filed in the juvenile

court, alleging that appellant was subject to the jurisdiction of the juvenile court, under §§ 211.031(1) (c) and (d). A hearing was held on the petition, under § 211.-071, and the court concluded that the petition under the juvenile law should be dismissed and that appellant might be prosecuted under the general laws. Thus, there was clearly a "case" under the Juvenile Code at which evidence was presented and that "case" was dismissed, leaving the matter to the criminal courts.

The more difficult question is whether or not Jones's testimony as to appellant's statements to him was precluded at the criminal trial as "evidence given" in a "case" under § 211.011 to § 211.431. In State v. Maloney, supra, the Arizona Supreme Court found that the phrase "evidence given in the juvenile court," as used in the statute of that state, meant, in effect, "evidence gathered in the 'juvenile proceedings.'" That court considered a statement by a juvenile to a police officer while the child is within the jurisdiction of the juvenile court (see § 211.131, subd. 3, supra) to be within the statutory prohibition even though the statement was never offered in evidence in a juvenile court proceeding. Harling did not rely upon a statute, but invoked consideration of "fundamental fairness." The Oregon Supreme Court in Gullings drew a clear distinction between statements to police and to juvenile officials.

█ Although we need not go as far as the Arizona Supreme Court did in Maloney and bring all "evidence gathered" in the juvenile proceedings within the exclusionary rule prescribed by the statute, we consider that, in the light of the objectives of the Juvenile Code and of the procedures of juvenile courts and court officers, the prohibition of our statute should be held to include statements made to a juvenile officer and presented to and considered by the court in the disposition of the case. The construction urged by the state would prac-

tically limit the statutory prohibition to testimony given by the juvenile before the court in the juvenile proceedings. This would permit the juvenile officer to procure the admission of the juvenile in the relaxed, nonadversary atmosphere of the juvenile interrogation and make the statement admissible in subsequent criminal proceedings. The role of the juvenile officer would be changed from that of a person whose function is to promote the welfare of the child to that of a policeman seeking out evidence which might be used against the child in a criminal case. The considerations of "fundamental fairness" alluded to in Harling do not permit the state, in the harsh adversary arena of the criminal courts, to take advantage of the procedures and attitudes which it promotes under the Juvenile Code.

Although the state has not urged that such a construction of § 211.271(3) is precluded by the en banc decision in State ex rel. Arbeiter v. Reagan, supra, we must give some attention to that case. The essential holding of Reagan was that, when the juvenile court found a child not a fit subject for proceeding under the Juvenile Code, the subsequent criminal proceeding to which the child was subjected was a continuation of the juvenile court proceedings and the criminal court succeeded to the juvenile court as the agency authorized, under § 211.321, subd. 1, to order the inspection of the juvenile records. The court in Reagan specifically declined to pass upon the admissibility into evidence of any statements which might be found in the juvenile court files. The concurring opinion of Judge Finch, in which two judges concurred, did intimate that if constitutional standards were met, the Juvenile Code would not preclude the introduction into evidence at the criminal trial of a confession of the juvenile, although evidence of such confession might have also been presented to the juvenile court. Since admittedly appellant here was not advised in any manner of the consequences of his

statements, the situation suggested by Judge Finch does not exist here and we need not consider that possibility.

Nor is it necessary that we do so for future guidance of juvenile courts and juvenile officers because the legislature, by House Bill No. 375 of the 75th General Assembly, has put the question here raised at rest by amending paragraph 3 of § 211.-271 to make inadmissible in criminal proceedings "all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel * * *." Our conclusion as to the meaning of § 211.271 as it existed when this case was tried makes it unnecessary to consider appellant's contention that House Bill No. 375 is remedial and therefore subject to retrospective application in this case.

The retrial of this case makes clear that the state must rely upon the statements of appellant to supply the proof of his guilt. The proof relied on in this case evidences that fact. In view of the decisions of this court rendering such statements inadmissible, we must conclude that the state does not have available to it legally admissible evidence of the defendant's guilt. Therefore, the only alternative is to order the discharge of appellant.

Judgment reversed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., HOLMAN, J., and TITUS, Special Judge, concur.

STORCKMAN, J., not sitting.