STATE of Missouri, Respondent,

v.

Arthur W. RICHARDSON, Appellant.

No. 57277.

Supreme Court of Missouri, En Banc.

June 11, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Philip H. Schwarz, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of council.

FINCH, Chief Justice.

This opinion, written on reassignment, involves the prosecution and conviction of defendant, a 15-year-old juvenile at time of the offense, on a charge of murder in the first degree. The jury convicted defendant of murder in the second degree and assessed his punishment at imprisonment for 35 years. We have jurisdiction because notice of appeal was filed prior to January 1, 1972. Mo.Const. Art. V, §§ 3 and 31, V.A.M.S. We affirm.

On the evening of October 5, 1970, two men, Sibbe Adell and Freeman Franklin, witnessed an incident at 12th and Euclid in Kansas City in which a Herbert Andreasen was shot and killed. The men were walking on 12th and noticed two young couples walking ahead of them. A white Plymouth auto pulled to the curb near the couples and stopped. As Adell and Franklin reached the auto, the door

was opened and one of the youths (later identified by Adell as defendant) was saying, "Get out. Get out." At that point, defendant turned and looked at Adell who got a good look at him. Adell and Franklin kept walking, but when they were a step or so beyond the car door, they heard a shot. Adell turned quickly and saw two more flashes from a gun. At the time, Adell was close enough that he could have leaned over and touched defendant. Adell and Franklin started running across the street, but stopped on the other side and looked back. They saw the two youths and one of the girls drag the victim from the car. Then the two youths got in the car and drove off.

Adell and Franklin then ran a short distance and flagged down a police cruiser, after which they returned to the scene with the policeman. Later, they accompanied him to headquarters.

A short time later, two officers at Linwood and Paseo heard a crash. When they investigated, they found a 1966 white Plymouth ramming into the back of another auto. The officers blocked off the Plymouth and ordered the driver out of the car. It proved to be defendant. A search of his person revealed a revolver and two capsules commonly known as T-birds (Tuinal). The revolver contained three loaded rounds and three expended rounds. Subsequent tests disclosed that the bullets which killed the occupant of the automobile were fired from this gun.

The automobile contained a checkbook labeled "Mr. and Mrs. H. W. Andreasen." Subsequent license check disclosed that the car belonged to Herbert Andreasen, the victim.

Defendant was placed under arrest, handcuffed, placed in the police cruiser and given a Miranda warning. He was transported to the main police headquarters, identified and then removed to an upper floor. Police contacted defendant's mother and she arrived at around midnight. She visited her son for a short time, after which he was escorted to the Youth Unit of the Juvenile Detention Facility, where he was placed in the custody of Charles Gardner, Deputy Juvenile Officer for Jackson County. Mrs. Davis, defendant's mother, also went to the Youth Unit building.

Defendant was required to change into blue denim trousers and a white T-shirt, after which he and five other boys, similarly dressed, were placed in a lineup at the Youth Unit building. Prior thereto, Gardner, according to his testimony, advised both defendant and his mother of defendant's right to counsel at the lineup, that counsel would be provided, and that if he wanted counsel, the lineup would be postponed until the next morning. Defendant, according to Gardner, stated that he understood.

The lineup was conducted at approximately 1:00 A.M. on October 6, 1970. Adell and Franklin viewed the lineup separately. Adell made a positive identification of defendant as the youth who had done the shooting. Franklin could not make any positive identification. The lineup was observed also by Mrs. Davis.

On October 12, 1970, the State filed a motion in Juvenile Court seeking to prosecute defendant under the general law on the basis that he was not a proper subject for disposition under §§ 211.011 to 211.-431.[1] After a hearing, the court sustained the State's motion. Thereafter, defendant was indicted for murder in the first degree.

Defendant contends on appeal that the trial court erred in overruling his motion to suppress the lineup evidence and the in-court identification of defendant by Sibbe Adell.

█ First, he says that his federal constitutional rights were violated by the

---

1. All references are to RSMo 1969, V.A.M.S., unless otherwise indicated.

lineup in that he was not represented by counsel and he did not knowingly and intelligently waive his right to counsel. He cites numerous cases but relies primarily on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S. Ct. 1951, 18 L.Ed.2d 1178 (1967). However, such right to counsel at a lineup applies in post-indictment or post-information situations. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) ; State v. Walters, 457 S.W.2d 817 (Mo.1970). The lineup in this case occurred within 2 or 3 hours after defendant was apprehended and long before defendant was indicted. Hence, defendant had no constitutional right to counsel at the lineup. This being so, we need not consider whether what occurred would be sufficient to constitute a knowing and intelligent waiver of a constitutional right.

■ Defendant's second point relating to the lineup is that under the totality of circumstances the lineup was so unnecessarily suggestive and conducive to irreparable mistaken identification that it tainted the identification by Sibbe Adell so that the court should have suppressed his in-court identification testimony. Defendant relies on the rule announced in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (1967).

We overrule this contention. The evidence does not show that the lineup was unnecessarily suggestive or conducive to irreparable misidentification. Six negro youths (including defendant) were placed in the lineup, all dressed in blue denim trousers and white shirts. All had close hair styles and approximately the same complexion. Heights were 5' 6", 5' 7", 5' 8", 5' 10", 5' 11" and 6' 1". Weights varied from 125 pounds to 165 pounds, with two in the 125–130 range and three 140 to 145 pounds. Defendant was allowed to select his position in the lineup and he chose No. 5. No one made any comments or suggestions to Adell or Franklin about which one to choose. Neither Adell nor Franklin were shown defendant except as a part of the lineup and the two witnesses viewed the lineup separately. In addition, defendant's mother was permitted to observe the lineup. Adell picked out defendant as the one at the car when the victim was shot, but Franklin made no identification.

■ In view of our conclusion that the lineup was not unnecessarily suggestive, we need not consider whether witness Adell had a sufficient independent opportunity to observe defendant other than at the lineup. The fact is, however, that the evidence clearly shows that such opportunity did exist at the scene of the shooting.

■ The third objection raised as to lineup evidence is that the trial court should have sustained objections thereto on the basis that it was in violation of § 211.-271(3) as interpreted in State v. Arbeiter, 449 S.W.2d 627 (Mo.1970). This contention necessitates examination of the provisions of § 211.271(3).

Prior to the amendment in 1969, § 211.-271, RSMo 1959, V.A.M.S., provided as follows :

"1. No adjudication of the juvenile court upon the status of a child shall be deemed a conviction nor shall the adjudication operate to impose any of the civil disabilities ordinarily resulting from conviction nor shall the child be found guilty or be deemed a criminal by reason of the adjudication.

"2. No child shall be charged with a crime or convicted unless the case is transferred to a court of general jurisdiction as provided in sections 211.011 to 211.431.

"3. Evidence given in cases under sections 211.011 to 211.431 is not lawful or proper evidence against the child for any purpose whatever in a civil, criminal or other proceeding except in subsequent cases under sections 211.011 to 211.431.

"4. The disposition made of a child and the evidence given in the court does

not operate to disqualify the child in any future civil or military service application or appointment."

The amended section, adopted in 1969, provides as follows:

"1. No adjudication by the juvenile court upon the status of a child shall be deemed a conviction nor shall the adjudication operate to impose any of the civil disabilities ordinarily resulting from conviction nor shall the child be found guilty or be deemed a criminal by reason of the adjudication.

"2. No child shall be charged with a crime or convicted unless the case is transferred to a court of general jurisdiction as provided in this chapter.

"3. After a child is taken into custody as provided in section 211.131, all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel and all evidence given in cases under this chapter, as well as all reports and records of the juvenile court, are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under this chapter.

"4. The disposition made of a child and the evidence given in the court does not operate to disqualify the child in any future civil or military service application or appointment."

It should be noted that subsections (1) and (4) are identical in both acts and the only change in (2) is to substitute "this chapter" for "in sections 211.011 to 211.-431." This was merely simplification of language. Hence, the only real change made by the 1969 amendment was in subsection (3).

Comparison of subsection (3) in both acts discloses that before the amendment, evidence given in proceedings against a youth in juvenile court could not be used as evidence against him except in a subsequent proceeding in the juvenile court. That continued to be true under the amended subsection. In addition, the new subsection, for the first time, provides that "admissions, confessions and statements by the child to the juvenile officer and juvenile court personnel * * * as well as all reports and records of the juvenile court" cannot be used against the child in any proceeding except a subsequent one in the juvenile court. These are *all* of the new prohibitions added by the 1969 amendment.

Here, we are not dealing with an admission, confession or statement by the defendant youth. No report or record of the juvenile court and no transcript or recording of evidence given in the juvenile court is involved. In other words, not a single one of those things enumerated in the amended statute was offered as evidence in the trial of defendant. Instead, the testimony objected to consisted simply of a recital by Adell of what he saw when he looked at a lineup not shown to be unfair or suggestive.

We find no language in § 211.271 which expressly or by implication indicates that the General Assembly intended by that statute to prohibit someone testifying as to what they saw when they looked at a juvenile in a fair lineup. There are occasions when it is important that officers ascertain quickly whether a suspect apprehended is the person sought for some offense. If he is not, they will want to renew their search for the proper person. This is equally true whether the suspect is an adult or a juvenile. To hold that § 211.271 insulates a juvenile from a lineup so long as he has not been discharged from custody of the juvenile court is to unnecessarily handicap proper police and juvenile officer investigation. Such a lineup does not equate with taking statements or confessions from the juvenile. No confidence is breached. The parens patriae philosophy is not violated. We do not find any fundamental unfairness to which reference is made in Arbeiter, Harling v. United States, 111 U.

S.App.D.C. 174, 295 F.2d 161 (1961), or State v. Maloney, 102 Ariz. 495, 433 P.2d 625 (1967), to which counsel for defendant refer. It must be remembered that we are interpreting the language of § 211.271 and attempting to ascertain legislative intention. We are bound by what the General Assembly said, not what it might have said. The language of § 211.271(3) is clear and explicit. It does not refer to a lineup.

Defendant's final point relates to objections sustained to proffered testimony of Dr. Zwerenz, a psychiatrist, but we find no basis therein for reversal of this conviction.

In the first place, it should be noted that there was no plea of not guilty by reason of mental disease or defect. Nevertheless, defendant was permitted to testify that at times he took Tuinal capsules (T-birds) which gave him a real nice feeling and that on the day of the shooting he had taken about six capsules, the last one sometime that evening. He also testified he had four cans of beer that day, one during the evening. He testified to lack of memory during the evening until he was in the lineup. There also was testimony that when arrested he staggered and appeared to be unaware of what was going on.

Then Dr. Zwerenz was called. In response to a lengthy hypothetical question in which he was asked whether he could say with reasonable medical certainty that defendant was suffering from a psychosis at the time of the shooting, he answered that he could not. He then was asked whether, based on the same hypothetical facts, defendant "could have acted in a cool and deliberate manner concerning the shooting." An objection to that question was sustained but no offer of proof was made.

Thereupon, counsel switched to a question about the effect of alcohol upon a person's bloodstream and followed with an inquiry which apparently referred to the victim. An objection was sustained and no offer of proof was made to show what the witness would have testified if permitted to answer about the effect of alcohol.

■ Defendant's brief recognizes that the rule in Missouri is that voluntary intoxication is not a defense to a criminal charge and that the rule does not even allow a jury to consider such intoxication on the issue of specific intent. The latter portion of the rule is a minority view, most states by statute or decision permitting intoxication to be taken into account with reference to a particular state of mind or intent. Defendant urges that we abandon the minority view and adopt the majority rule. We decline to do so, particularly in view of the record in this case. No offer of proof was made and there is nothing before this Court (and there was nothing before the trial court) to show that the witness would have testified that voluntary intoxication or drug consumption would have made it impossible for defendant to have the requisite intent to commit murder in the second degree. When the witness did answer the first hypothetical question, he found no psychosis present. In this framework we decline to consider overturning a rule which goes back to 1855 and the case of State v. Harlow, 21 Mo. 446, and which has been reaffirmed many times since.[2]

■ In connection with this point, defendant concludes by saying that on the basis of the authorities cited "the trial court should have instructed the jury that they could have found the appellant guilty of a lesser offense such as voluntary manslaughter if they had a reasonable doubt as to any of the elements of the crime

---

2. See State v. Cross, 27 Mo. 332 (1858); State v. Hundley, 46 Mo. 414 (1870); State v. Brown, 181 Mo. 192, 79 S.W. 1111 (1904); State v. Jordan, 285 Mo. 62, 225 S.W. 905 (1920); State v. Ship- man, 354 Mo. 265, 189 S.W.2d 273 (1945); State v. Garrett, 391 S.W.2d 235 (Mo.1965); Mo. Digest, Crim.Law ■

charged against him, that is, murder in the first or second degree." The point is not elaborated upon and we find no merit therein. There was no evidence in the case to support a manslaughter instruction and the court did not commit error in failing to give such an instruction.

Judgment affirmed.

MORGAN, HOLMAN and BARDGETT, JJ., concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

SEILER and HENLEY, JJ., dissent and concur in separate dissenting opinion of DONNELLY, J.

DONNELLY, Judge (dissenting).

I believe prejudicial error occurred at trial when witness Sibbe Adell was permitted to testify, in the presence and hearing of the jury, that he identified appellant at a lineup conducted while appellant was in the custody of the Juvenile Court.

The pertinent portion of the transcript reads as follows:

"Q (By Mr. Fitzgerald) At this Juvenile Home what took place?

"A They took me inside—they took me inside this little door, after we went upstairs and asked me to see if I could identify the guy that I saw in the lineup. They had six guys there.

"MR. SCHWARZ: May my objection be shown?

"THE COURT: It will be a continuous objection.

"Q (By Mr. Fitzgerald) And how were the six guys in the lineup dressed?

"A Had on white T-shirts and blue jeans, looked like blue jeans. I can't recall correctly whether it was blue jeans or not.

"Q And did you pick someone out of the lineup?

"A Yes, I picked the one that was fifth—second from my right or fifth from my left.

"Q And the person that you picked out of the lineup is the person that you saw firing the shot into the car on October 5th, 1970? A It is.

"Q And that is the defendant here in the courtroom today?

"A Yes, sir."

In my opinion, the action of our General Assembly in 1969, in amending V.A.M.S. 211.271(3), evidences deference to the insistence on the part of the United States Supreme Court, as restated on June 21, 1971, in McKeiver v. Pennsylvania, 403 U.S. 528, 543, 91 S.Ct. 1976, 1985, 29 L. Ed.2d 647, "that the applicable due process standard in juvenile proceedings, as developed by *Gault* and *Winship*, is fundamental fairness."

The problem is one of reconciling the concept of "preservation of the integrity of the juvenile system, lest it become a mere adjunct to the regular criminal processes" (Edwards v. United States, 117 U.S.App. D.C. 383, 330 F.2d 849, 851), with the necessity for preservation of "the safety and security of the law-abiding public" (State v. Gullings, 244 Or. 173, 416 P.2d 311, 314).

I agree that we should not construe § 211.271 so as to "unnecessarily handicap proper police and juvenile officer investigation." Accordingly, I would not insulate a juvenile from a lineup while he is in the custody of the Juvenile Court. Further, I would not prohibit a witness who has attended such a lineup from making an in-court identification of an accused at a trial under the general law. However, I believe

the standard of "fundamental fairness" requires that a witness who has attended a lineup conducted under the auspices of the Juvenile Court not be permitted to testify, at the trial under the general law, that he identified the juvenile at such lineup. "Only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities" (Gilbert v. California, 388 U.S. 263, 273, 87 S.Ct. 1951, 1957, 18 L.Ed.2d 1178), not be allowed to make the juvenile system "a mere adjunct to the regular criminal processes." (Edwards v. United States, supra, 330 F.2d 849, 851.)

I respectfully dissent.