**STATE of Missouri, Respondent,**

v.

**Ray Anthony THOMPSON, Appellant.**

**No. 57375.**

Supreme Court of Missouri,
Division No. 1.

Dec. 10, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Michael W. Lerner, Kansas City, for appellant.

HIGGINS, Commissioner.

Ray Anthony Thompson was convicted by the court following jury-waived trial of robbery, first degree, by means of a dangerous and deadly weapon. His punishment was assessed at six years' imprisonment and sentence and judgment were rendered accordingly. Rule 26.01, V.A.M.R.; §§ 560.120, 560.135, RSMo 1969, V.A.M.S. (Appeal taken prior to January 1, 1972.)

Appellant contends (V) that the evidence was not sufficient to sustain conviction, and that there was a prejudicial variance between proof and charge.

By information filed November 3, 1970, it was charged that Ray Anthony Thompson at Jackson County, Missouri, on September 26, 1970, did unlawfully and feloniously make an assault on John Dunfee with a dangerous and deadly weapon and did feloniously rob, take and carry away an undetermined amount of money, property of John Dunfee, d/b/a 24th Street Cleaners.

This information was amended March 23, 1971, to charge that Ray Anthony Thompson, on the 26th of September, 1970, did, alone or in concert with another, unlawfully and feloniously make an assault upon Robert Olinger with a dangerous and deadly weapon, and did feloniously rob, steal, take and carry away $121, the property of Robert Olinger.

Defendant was arraigned on the amended information March 23, 1971, at which time he was present with his attorney and waived preliminary hearing on the amended information. Pretrial motions to dismiss and to suppress were heard, considered and overruled, after which defendant filed his written waiver of jury trial and the cause was set for trial (and tried) beginning March 24, 1971.

Robert Ray Olinger, permanently employed at General Motors Assembly Division, Kansas City, Kansas, worked Saturdays at 24th Street Cleaners, 4206 East 24th Street, Kansas City, Jackson County, Missouri. The shop was owned by a partnership of his uncle through marriage, John Dunfee, and Bob Beeman.

On September 26, 1970, at approximately 5:00 p. m., he was in the shop working behind the counter. Between 5:00 and 5:20 p. m., still daylight, two men "held us up." One approached the counter and asked Mr. Dunfee for an order of cleaning. "He was about five foot eleven; weighed about one hundred eighty pounds; he had short hair; medium complected negro. * * * colored shirt and dark trousers." As Mr. Dunfee went to get the cleaning, defendant entered the store. " * * * he had on a yellow sweater, had big pockets in the front and had his left hand down in his pocket * * *." Defendant approached and laid his head down on the counter. " * * * he was acting funny like something was bothering him." The second man (defendant) was approximately five feet six inches tall, and Mr. Olinger made an in-court identification of him. The defendant continued to act suspiciously and Mr. Olinger himself became suspicious and "kind of looked down; when I did, I heard this, to me * * * sounded like a hammer on a revolver. When I looked back, this man (defendant's companion) had a gun pointing about eight inches between my eyes." Defendant then pulled a revolver, and the first man advised that "this is a holdup; and I'm not fooling." Mr. Dunfee then came to the counter and, at the assailant's direction, opened the cash register. The victims were then told to turn their backs, after which defendant took some clothing and his companion emptied the cash register. As the robbers left they pulled the telephone from the wall and Mr. Olinger saw defendant enter a waiting automobile which drove south on Spruce

Street. He gave chase in his cleaning truck but lost sight of defendant's automobile after it went down Kensington and on south.

On September 28, 1970, Mr. Olinger saw defendant in a lineup at the Juvenile Parental Home. The lineup took place between 10:00 and 10:30 p. m., and it consisted of five people, all dressed alike, and "more or less" the same height. Defendant was standing in the middle, and Mr. Olinger identified him through features in his physique and face.

Some $120 or $121 in currency was taken in the robbery. Defendant was as close as a foot to Mr. Olinger at one time, and he had defendant under observation in the store for four of the six minutes that the robbery consumed.

When the police arrived Mr. Olinger described defendant as "five foot six and weighed between one hundred forty to one hundred fifty pounds, that he was between seventeen and eighteen years old, had on a white hat and sun glasses and yellow sweater and dark trousers, and was dark complected negro."

John Dunfee was "self-employed; I am in a partnership, A and M Cleaners in Independence, and 24th Street Cleaners in Kansas City * * * 4204 and 4206 East 24th."

On September 26, 1970, he was present at 24th Street Cleaners with his nephew, Robert Olinger. Around 5:20 p. m., "two colored people came in and robbed us." The first man in, the taller of the two, asked for an order of cleaning. He went to get it but could find no such order. He heard Bob Olinger call for him and, when he returned to the counter, he could see defendant with a gun, "waving it around like as if he wanted to shoot it off or something." The taller man had a gun "pointed at Bob Olinger's head." At the robber's direction, he opened the cash register; and, at further direction, both he and Mr. Olinger stepped back and turned their

backs. In addition to money from the register, defendant took some clothing. When the door slammed he turned and saw the robbers run down Spruce and enter an automobile. He figured that about $121 in money and some $250 in clothing had been taken in the robbery.

On September 28, 1970, about 10:00 p. m., he viewed a lineup in juvenile court. The lineup contained five or six persons. "I couldn't swear today I seen him in the lineup." He identified defendant in court as one of the robbers. He was as close as seven or eight feet from him for as much as fifteen or twenty seconds and observed him otherwise in the shop and at the counter. "* * * the first thing that attracted my attention was—is the way he holds his head, because when he came into the counter that day, and I was walking up towards the counter, and he was waving his gun around, his head was flopping around like a chicken that has limberneck, * * * I noticed how he kind of swaggered and walked around; I have noticed him to do that, too, since then." The lighting was good in the shop.

Don Lacey of the Kansas City, Missouri, Police Department investigated the September 26, 1970, robbery at 4206 East 24th Street, Kansas City, Missouri. He received a call at 5:29 p. m. and went to the shop where he spoke with John Dunfee and his helper. He received a description of defendant as "negro male, approximately eighteen to twenty years of age; five-six, weight was one hundred forty to one hundred fifty; build, medium; hair, black; brown eyes; complexion, dark. Clothing description * * * white hat on, a yellow shirt and dark trousers." The other suspect was described as a larger man.

Gerald L. Ludwig, also of the Kansas City Police Department, was on duty September 28, 1970. He saw defendant at 4:08 p. m. walking westbound near 30th and Spruce. He talked with defendant a few minutes after which defendant proceeded. A little later he placed defendant under ar-

rest approximately a block and a half from 30th and Spruce at 28th and Spruce "for investigation for armed robbery and for hit and run." He gave defendant custodial warning (Miranda) just prior to placing him in the patrol wagon. He was in company of "the co-defendant; that would be Ramsey." He saw both men about an hour and fifteen minutes later "after we recovered * * * all the property I had found in the weeds, which caused my arrest"— where Ramsey and Thompson were located. He did not interrogate either about the robbery.

After his unsuccessful motion for acquittal at the close of the State's case, defendant testified in his own behalf.

Ray Anthony Thompson became seventeen years of age March 13, 1971, and lived with his mother. He was arrested around 3:30 p. m., September 28, 1970, on the way to 24th and Cypress where Dorothy Brown, a cousin of Roy Ramsey, lived. He could not recall what he had been doing around 5:00 p. m., September 26, 1970. He denied participation in the robbery at the 24th Street Cleaners on September 26, 1970. He was informed about the robbery by police when he arrived at the juvenile building. He was not interrogated about the robbery.

■ The evidence has been stated in detail because it demonstrates a submissible case against defendant of robbery, first degree, by means of a dangerous and deadly weapon, of Robert Olinger, on September 26, 1970, in Jackson County, Missouri, all as charged by the amended information upon which defendant was tried. §§ 560.-120, 560.135 supra. It may be observed that the statement also demonstrates a submissible case of robbery, first degree, with a dangerous and deadly weapon, of John Dunfee, d/b/a 24th Street Cleaners, as charged in the original information.

■ Appellant contends (I) that the court erred in failing to suppress evidence of his identification by way of lineup "since the court admitted that the appellant's Sixth Amendment rights were violated in the lineup procedure and since the evidence does not support either a finding that the identification at trial was not tainted by the illegal lineup or a finding that the error was harmless."

Appellant would support this assertion by quotation from the trial court's findings following hearing on the pretrial motion to suppress lineup identification "that the lineup held in the juvenile court did not meet the principles enunciated in the Wade, Gilbert and Simmons cases. It is true that the defendant was not given the notice and the opportunity that he should have under the .law. But, nevertheless, I don't see how he was harmed by that failure * * * the witness, Olinger, would have identified * * * the defendant, Thompson anyway. His identification appeared to me to be of sufficient certainty that it was not likely to be shaken by such assistance as an attorney would render in a lineup situation." Appellant cites United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), among other well-known federal and state cases concerning lineups, to argue that admission of the lineup evidence in this case was erroneous because he did not have counsel at the lineup.

The difficulty with this argument and the entire contention, including the trial court's quoted reasoning, is that the "Wade-Gilbert" rule applies only to postindictment lineups and not to preindictment lineups. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Walters, 457 S.W.2d 817 (Mo.1970). Accordingly, it was not error to fail to suppress the lineup in question; and, since the lineup evidence was not illegal and not erroneously admitted, it did not taint the in-court identification. It may be noted also that the evidence demonstrates presence of an independent source to support the in-court identification of defendant.

In his reply brief, appellant "does not take exception to the pre-indictment standard in Missouri as reiterated in State v. Walters." He asserts, however, that a different standard should apply to lineups conducted while the suspect is within the jurisdiction of the juvenile court and subject to the provisions of Section 211.271, RSMo 1969, V.A.M.S. This is no longer an open question in Missouri. See State v. Richardson, 495 S.W.2d 435, 438–440 [5] (Mo. banc 1973).

■ Appellant charges that the court erred in failing to suppress the lineup for the further reason (II) "that it was conducted by an officer of the juvenile court and its results were admitted in a prosecution under the general law, in violation of appellant's rights under Section 211.271."

This, too, is no longer an open question in Missouri. State v. Richardson, supra.

■ Appellant charges (IV) that the court erred in overruling his motion to dismiss "in that the information by which he was charged was not identical to the petition filed in the juvenile court and he was certified over on a charge different from that upon which he was tried."

As support for this assertion, appellant cites Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967), and, particularly, United States ex rel. Turner v. Rundle, 438 F.2d 839, 842 (3rd Cir. 1971), for his proposition "that before a juvenile is certified to an adult court he must be given 'at a minimum' due notice of the charges against him." He argues that "no such 'due notice' was given appellant if he was tried on charges different from those on which he was certified."

The asserted error is not present in this case. It appears by quotation in respondent's brief (uncontradicted by appellant) that Ray Anthony Thompson, a juvenile,

was permitted to be prosecuted as an adult only after a hearing accorded the juvenile under Section 211.071, RSMo 1969, V.A. M.S. and notice given him by a motion filed by the deputy juvenile officer asserting that "on 9–26–70 in Jackson County, Missouri, the said Ray Anthony Thompson did . . . make an assault in and upon one Robert Olinger with a dangerous and deadly weapon . . . and did feloniously rob, steal, take and carry away . . . one hundred twenty one dollars ($121.00) . . . the money and personal property of John Dunfee, in the care and custody of the said Robert Olinger, from the person and against the will of the said Robert Olinger . . . by force . . . and by putting the said Robert Olinger in fear of an immediate injury. . . ."

These allegations comport with those of both the original and amended informations; and of insuperable difficulty in appellant's contention is the record which shows defendant's positive lack of objection to the filing of the amended information upon which he was tried and his waiver of preliminary hearing on that charge. State v. Lafferty, 416 S.W.2d 157, 160–161 [3] (Mo.1967).

■ Also, by way of complaint going to proceedings in the juvenile court, appellant charges (III) that the court erred in overruling his motion to dismiss "based upon the action of the juvenile court in certifying appellant to be prosecuted under the general law, because the order of the juvenile court violated appellant's rights." Appellant's argument is that the juvenile court judge "gave deference to the best interests of the state, in derogation of the welfare of the child, which is a violation of the conjunctive nature of the two interests [state and child] in section 211.011 of the Juvenile Code."

This assertion is inconsistent with the findings of the juvenile court quoted in part in appellant's brief: " . . . that

**364**

he has demonstrated by his behavior that he cannot adjust to society and that he is beyond further rehabilitative care, treatment and services of this court; that every possible means and resource available under the Juvenile Code to rehabilitate said child has been exhausted; that he would not benefit from further care, treatment or services available under the Juvenile Code." These findings are in keeping with the exercise of discretion granted to a juvenile court by Section 211.071, supra, to permit prosecution of a child under the general law "whenever the judge after receiving the report of the investigation required * * * and hearing evidence finds that such child or minor is not a proper subject to be dealt with under the provisions of [this chapter]." State ex rel. Arbeiter v. Reagan, 427 S.W.2d 371, 377 [4] (Mo. banc 1968); State v. Williams, 473 S.W.2d 382 (Mo.1971).

In his reply brief, appellant also asserts that the court erred in admitting the testimony of a juvenile court employee concerning the lineup identification of appellant. He argues, citing State v. Degraffenreid, 477 S.W.2d 57 (Mo. banc 1972), that the admission of hearsay evidence in the pretrial hearing over objection was error.

The distinction of this case from appellant's citation is that the transcript reference shows only that the juvenile court employee testified at the voir dire hearing that a witness identified a boy in the lineup; he did not testify at all at defendant's trial.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.