STATE of Missouri, Respondent,

v.

**Lavance JONES, Appellant.**

No. KCD29581.

Missouri Court of Appeals, Kansas City District.

Aug. 28, 1978.

Motion for Rehearing and/or Transfer Denied Oct. 10, 1978.

Application to Transfer Denied Nov. 6, 1978.

Joe F. Willerth, C. William Kramer, Independence, for appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Defendant appeals his conviction of murder in the second degree on which he was sentenced to life imprisonment and robbery on which he was sentenced to 25 years imprisonment. The evidence viewed favorably to the prosecution showed the following skeletal facts.

On the evening of October 25, 1976, defendant, his brother Aaron, and Marvin Williams joined in a project to rob the Eastwood Hills Animal Hospital. James E. Burkholder, the employee on duty, was forced to hand over his billfold from which the robbers took $30. Then Burkholder was shot several times and killed. All three of the robbers were apprehended. Williams pleaded guilty and testified for the prosecution against defendant. Defendant testified on his own behalf, offering an alibi defense.

Defendant assigns seven points of error, each of which will be discussed in turn.

I.

The police investigation discovered a credit card case at the scene of the crime which was apparently taken from Burkholder's billfold, and that plastic card case was found to contain fingerprints. The police had applied previously to the juvenile court in 1974 for an order to take defendant's fingerprints in connection with a burglary case, the order had been issued, and comparison fingerprints had been taken. Those prints were found to match the fingerprints on the card case. Defendant argues that his fingerprints should have been excluded from evidence for the reasons: (a) such admission violated the provisions of Section 211.271(3) [1]; (b) the fingerprints in question were inadequately identified as those of defendant.

Section 211.271(3), to which defendant makes reference, provides that statements given to juvenile court personnel "as well as * * * records of the juvenile court" shall not be used for any purpose in criminal proceedings. Defendant claims that his fingerprints were part of the "records of the juvenile court" because they were taken while he was still in custody of the juvenile court and the approval of the juvenile judge had been required under the provisions of Section 211.151(2).

1. All statutory references are to RSMo 1969.

Defendant's conclusion does not follow. The permission to take the prints was given by the juvenile judge to the Kansas City Police Department, the prints were taken by the Police Department, and those prints then became part of the Police Department file. These prints accordingly became part of the Police Department records, and were not a "record of the juvenile court."

 Moreover, this statute is to be construed in light of its purpose, which was to permit and encourage discussion and consultation between the juvenile and the juvenile officer in a relaxed, nonadversary and confidential setting. *State v. Ross*, 516 S.W.2d 311 (Mo.App.1974). This purpose has meaning when applied to statements made by a juvenile, but it has no relevance to the present situation involving the taking of fingerprints. Rather, the present situation is like the "line-up" cases in which it has been held that there is no call for the protection of Section 211.271. *State v. Richardson*, 495 S.W.2d 435 (Mo. banc 1973); *State v. Thompson*, 502 S.W.2d 359 (Mo. 1973); *State v. Holland*, 534 S.W.2d 258 (Mo.App.1975).

Still further, defendant admits that the exclusion of the fingerprints already taken from defendant would not in the end bar the use of his fingerprints for matching purposes. All that would be required, even according to defendant, would be the taking of new fingerprints subsequent to the waiver of jurisdiction by the juvenile court in favor of adult criminal proceedings. As pointed out aptly by the trial court, "it would be rather ludicrous to assume that the Court could not require, and the defendant should not be required, to submit to a new fingerprint examination, and I think to go through that process in order to avoid what appears to be the proper description [sic] of the statute in presenting this record would just be delaying the trial, and I don't see that it accomplishes anything. * * * I think it should be received in evidence without having to go through the process of another fingerprint examination and test."

 The second branch of defendant's attack upon use of the fingerprints is that those prints were not adequately identified as being his. With respect to this point, an employee of the Police Department testified as to the procedure of taking the prints and identified Exhibit 23 as the fingerprint card of "Lavance Cerrell Jones" and noted that the address listed on the card was "3821 Elmwood." Defendant testified at trial that his full name was "Lavance Cerrell Jones" and that he lived at 3821 Elmwood. Under this testimony showing the identity of names, identification of the person may be presumed. *State v. Stevenson*, 550 S.W.2d 598 (Mo.App.1977); *State v. Amos*, 490 S.W.2d 328 (Mo.App.1972); *State v. Jenkins*, 516 S.W.2d 522 (Mo.App.1975). It can be added that the evidence here showed not only identity as to name, but also identity as to address and also as to age.

## II.

 Defendant next objects to the exclusion of medical records of Western Missouri Mental Health Center which were offered by defendant for the purpose of impeaching Marvin Williams. Williams had been asked on cross-examination whether he had ever been a patient at Western Missouri Mental Health Center, to which he answered in the affirmative. As to whether the Hospital had told him whether he had any problem, Williams answered "they said I was normal." Defendant thereafter unsuccessfully offered the Hospital records "as representing both possible impeaching of Marvin Williams' testimony, and that the contents thereof may directly affect his credibility or testimony in any matter, as may affect his mental condition." The purpose and nature of this offer was elaborated in defendant's argument in support of his motion for new trial when defendant's counsel pointed out that the Hospital records "included a reference to Mr. Williams being in part responsible for the death of a cousin in Arkansas." Defendant attempts to add still a third element to this point by arguing in his brief in this court that the Hospital records would tend to show interest and bias by Williams against defendant.

With respect to the question of Williams' mental condition, the Hospital records contain nothing to contradict Williams' testimony on the stand that the Hospital did not say anything adverse to him by way of mental disease or defect. The Hospital records in question have been included in the transcript on appeal and have been carefully examined. They show that Williams was admitted on three separate occasions. The first admission occurred on November 18, 1970, for family therapy, when Marvin was 10 years old. The final diagnosis was deferred at the time when those therapy sessions terminated. The next admission was February 18, 1975, on referral from the Juvenile Court for psychiatric evaluation. The conclusion of the Hospital staff at that time was, "no mental disorder." The final admission was on July 11, 1976, following a disturbance in the home. The Hospital diagnosis on this occasion was "adjustment reaction of adolescent." None of this constituted a contradiction of Williams' testimony, nor did these psychiatric evaluations tend to show any mental incapacity tending to deprive Williams' testimony of credence. To the extent that he had been a mental hospital patient, that fact was already in evidence and before the jury by Williams' own testimony; nothing in the Hospital records had any value for the jury beyond that bare fact.

The records pertaining to the 1970 admission do, however, contain considerable reference to the traumatic consequences to the whole family flowing from an episode where Marvin and his younger brother "allegedly beat two year old female cousin, who later died." The most that can be said with respect to this episode is that the Hospital notes seem to accept the cousin's death as a fact and assume that the death resulted from a beating in which Marvin Williams participated. Nevertheless, assuming those facts to be true, proof thereof does not constitute admissible impeachment evidence. First of all, no question was asked of Williams with respect to the episode in question, and therefore no proper foundation was laid for impeachment. *Martinez v. Avila,* 76 N.M. 372, 415 P.2d 59

(1966). Secondly, if a foundation question had been asked, defendant would have been bound by the answer thereto; he would be barred from impeaching by extrinsic evidence of specific acts of misconduct, collateral to the issues on trial, other than proof of an actual conviction for that collateral misconduct. *Martinez v. Avila, supra; State v. Messley,* 366 S.W.2d 390 (Mo.1963); *State v. Hayes,* 356 Mo. 1033, 204 S.W.2d 723 (1947); *State v. Perkins,* 342 Mo. 560, 116 S.W.2d 80 (1938); *State v. Bagby,* 338 Mo. 951, 93 S.W.2d 241 (1936); *State v. Lynch,* 528 S.W.2d 454 (Mo.App.1975).

With regard to defendant's contention that the Hospital records would tend to show bias and prejudice by Williams against defendant, a careful reading of those records discloses nothing therein tending to so show. Defendant did say in the course of his testimony that Williams "always used to ask me why he do something that he did when he was in Little Rock, Arkansas." That apparently was a reference by Williams in conversation with the defendant about the death of Williams' cousin and seems to reflect a continuing preoccupation by Williams with that episode. However, that does not constitute a basis of charging bias and prejudice by Williams against defendant. Nothing in the Hospital records mentions defendant or tends to show any bias or prejudice by Williams against defendant.

Exclusion of the Hospital records in no way prejudiced defendant's rights.

### III.

The indictment on which this case went to trial alleged that defendant committed robbery of certain property including $30 in U.S. currency which was "the personal property of Eastwood Hills Small Animal Hospital, a corporation, in the care and custody of James Burkholder." The evidence, on the other hand, showed that the $30 in question belonged to Burkholder personally, not to the Hospital. Defendant attacked this discrepancy by motion for judgment of acquittal, in response to which

the prosecution requested permission to substitute an amended information in place of the indictment to correct the error and to show the money to have been that of Burkholder. Defendant for this third point on appeal challenges the propriety of the trial court permitting that substitution.

 Rule 24.02 provides that an information can be substituted for an indictment if there is no difference in the offense charged and if substantial rights of the defendant are not prejudiced. The present situation falls within that rule. An allegation as to just who owned the stolen property (so long as it was not owned by the defendant himself) is immaterial, because the allegation of ownership is not an essential element of robbery. *State v. Wright,* 476 S.W.2d 581 (Mo.1972); *State v. Scott,* 534 S.W.2d 537 (Mo.App.1976).

### IV.

During the course of direct examination of Williams, the State offered a statement which Williams had given to the police after his arrest. On defendant's objection, the trial court excluded the statement as being a prior consistent statement before any impeachment had been attempted. Cross-examination of this witness probed into the plea bargaining and "deal" made between the witness and the prosecuting attorney. Then on redirect examination the prosecutor asked whether Williams had testified to anything on the stand that he had not said at the time of his written statement to the police. Objection to this question was sustained. Then the prosecutor asked, *without objection,* and received a negative response to the following question: "Did you say anything when you testified today, against Lavance Jones, did you say anything today that you hadn't previously told the police before the deal was made with the prosecutor?"

In final jury argument, the prosecutor included the following: "He gave a statement to the police as to the same details he testified before you at about 6:30 on the following Wednesday. * * * The most significant thing about Marvin Williams'

testimony is this. He gave the same story to the police on Wednesday at 6:30 that he gave from the witness stand last week when he plead guilty. He gave the same story from the witness stand again Tuesday morning while testifying in this lawsuit in this criminal proceeding." Defendant for his fourth point on appeal contends that the prosecutor was attempting to argue the contents of the prior consistent statement which had been ruled inadmissible and that the argument was prejudicially unfair.

 No objection was made to the portion of the argument now in question, and this point therefore has not been preserved for appellate review. Defendant recognizes this difficulty and asks that the question be considered as plain error under Rule 27.-20(c). However, closing argument will rarely affect substantial rights so as to result in plain error. *State v. Mayfield,* 562 S.W.2d 404 (Mo.App.1978); *State v. Wendell,* 547 S.W.2d 807 (Mo.App.1977). The facts of the present case present no exception to that general rule.

### V.

In support of defendant's alibi, defense witness Roy Bausby testified that on October 25, 1976, he was watching television at 10:00 p. m. when appellant came to his home and the two of them watched television together from 10:00 p. m. until approximately 10:45 p. m. On cross-examination, Bausby was asked what channel they were watching and he answered Channel 9. The prosecuting attorney asked whether he was sure of that, to which Bausby answered "I'm very sure." Then the prosecutor asked the following questions to which the following answers were given:

"Q If Channel 9 were showing the football game between the Washington Redskins and the St. Louis Cardinals on the very evening that you say you were watching the news at 10:00 o'clock, you'd probably be mistaken, wouldn't you, that that was the night that Lavance was with you?

A No.

Q Sir?

A No, sir.

Q So according to your testimony there could not have been a football game on Channel 9 that night at 10:00 o'clock, because you were watching the news that night at 10:00 o'clock on Channel 9, isn't that right?

A Right. Yes, sir."

The prosecution then called as a rebuttal witness the program director of Channel 9 who testified that the master program schedule of Channel 9 showed that at 10:00 p. m. on October 25, 1976, the Washington Redskin-St. Louis Cardinal football game was being shown and lasted until 11:03 p. m. The defendant objected to this rebuttal evidence on the grounds of materiality and relevancy and presently argues that said objection was improperly overruled.

■■■ The trial court owns a wide discretion respecting the scope of cross-examination, including how far collateral issues may be pursued by way of rebuttal in order to attack credibility of a witness. *State v. Williams*, 442 S.W.2d 61 (Mo. banc 1969); *State v. Harvey*, 449 S.W.2d 649 (Mo.1970); *State v. Holland*, 530 S.W.2d 730 (Mo.App. 1975); *State v. Hoyel*, 534 S.W.2d 266 (Mo. App.1976). That discretion was not abused here.

## VI.

■■■ Defendant next argues that the method of selecting the jury systematically excluded women and denied defendant his right to be tried by a jury representative of a cross section of society. He concedes that this point was ruled contrary to his contention in *State v. Duren*, 556 S.W.2d 11 (Mo. banc 1977), but he argues in his brief "[t]hat opinion is poorly reasoned and inconsistent and should be re-considered." This argument is misdirected, inasmuch as this court obviously has no authority to overrule a decision of the Missouri Supreme Court.

## VII.

■■■ For his final point, defendant objects to the admission into evidence of a color photograph of Burkholder's dead body at the scene of the crime. A picture, even though gruesome, may be admitted for the purpose of showing location of wounds and in order to corroborate the testimony of a State's witness. The trial court has a wide discretion in this regard. *State v. Frazier*, 550 S.W.2d 590 (Mo.App.1977); *State v. Dodson*, 556 S.W.2d 938 (Mo.App.1977); *State v. Snow*, 558 S.W.2d 414 (Mo.App. 1977).

In the present case Williams testified that defendant shot Burkholder in the leg, which was in addition to other shots inflicted by defendant's brother. The photograph in question disclosed the wounds so described, and corroborated the testimony of Williams. Under the established rules, the photograph was properly admissible.

There being no merit in any of defendant's Points on Appeal, the judgment and conviction is affirmed.

All concur.