**In the Interest of J.A.C., A Minor and B.M.C., A Minor,**

**and**

**James and Jeanne Russell, on Behalf of J.A.C. and B.M.C., Appellants.**

**Nos. WD 37490, WD 37491.**

Missouri Court of Appeals, Western District.

July 8, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1986.

Application to Transfer Denied Oct. 14, 1986.

Roy W. Brown, Bruce W. Brown, (argued), Kearney, for appellants Russell.

Max Von Erdmannsdorff, Kansas City, for Juvenile Officer.

Before DIXON, P.J., and MANFORD and NUGENT, JJ.

NUGENT, Judge.

These are consolidated appeals by James and Jeanne Russell from an order of the circuit court denying them access to the juvenile court records of the children J.A.C. and B.M.C., the grand nephews of James Russell.

On October 4, 1979, the juvenile court placed the two boys in the custody of the juvenile officer to be placed in the foster home of their maternal uncle, James Russell, and his wife, Judy, subject to further order of the court. In 1983, the Russells apparently made some overtures toward adopting the children, but their marriage deteriorated, and in 1984 the boys were taken from them and placed in the "protective custody" of others. James Russell has seen the boys only once since then.

In June, 1985, James Russell and his new wife, Jeanne, desiring to adopt the children, filed motions to open the boys' juvenile court records. The motions asserted as grounds for the opening to them of the records the fact that Mr. Russell is their great uncle, the movants' desire to adopt the boys, and the need to acquire information about the boys' whereabouts for jurisdictional and venue purposes, about the termination of their parents' rights and about the history of the placement of the

1. Revised Statutes of Missouri, 1978.

boys in the foster care of James and Judy Russell.

On July 25, 1985, the juvenile court heard evidence on the motions and denied them from the bench without comment.

On this appeal from the denial of their motions, the Russells complain that the trial court abused its discretion in denying them access to the juvenile court's records. They assert that they have a legitimate interest in the records because Mr. Russell is a relative of the boys, that he had custody of the boys for some four and one-half years, that the records contain information about his personal relationship with the children and because the Russells want to adopt the boys and need to see the juvenile files "to properly prepare for such legal proceedings."

Section 211.321 [1] pertaining to juvenile court records provides in its pertinent part that

1. The proceedings of the juvenile court shall be entered in a book kept for that purpose and known as the juvenile records. These records as well as all information obtained and social records prepared in the discharge of official duty for the court shall not be open to inspection or their contents disclosed, except by order of the court to persons having a legitimate interest therein. . . .

The simple question thus presented is whether the Russells have shown that they have a "legitimate interest" in the juvenile court records.

The only showing of interest made in this case is Mr. Russell's blood relationship and his interest in adopting the two boys. The mere relationship of great uncle to grand nephew is not ordinarily such a close relationship as ipso facto to give the great uncle access to the juvenile court's records pertaining to the grand nephew. Nor by itself is the fact that the great uncle for four and one-half years had physical custody of the grand nephew, especially where, as in this case, at the end of that period the physical custody was termi-

nated to place the grand nephew in "protective custody."

▮ Whether an applicant has a legitimate interest in the contents of the records of the juvenile court will vary from case to case. In all cases, the question is one to be decided by the juvenile court in the exercise of its discretion. The court will be guided by the policy considerations underlying § 211.321 and other provisions of the juvenile code. The general policy of the juvenile law is to hold the records of juvenile proceedings inviolate. The legislature's concern about the use of juvenile records is reflected in the 1980 amendment of § 211.321 which tightened the strictures against disclosure of those records. Supreme Court Rules 122.02 and 122.04 reflect the same concern. Rule 122.02 provides as follows:

> The records of the juvenile court as well as all information obtained and social records prepared in the discharge of official duty for the court shall be kept confidential and shall be open to inspection only by order of the judge of the juvenile court.

The obvious purpose of the statutory requirement of confidentiality is to protect the child and the processes by which the state protects children. *Cf. State v. Jones,* 571 S.W.2d 741, 744 (Mo.App.1978).

▮ The fact that movants in these cases wanted to adopt the two boys by itself does not give them any legitimate interest in the juvenile records that has ever been recognized by the courts of this state. The Russells made no showing of any special need in the preparation of prospective adoption proceedings that would support their claim of legitimate interest.

In these circumstances, the juvenile judge did not abuse his discretion in denying the Russells access to the juvenile court records.

For the foregoing reasons, we affirm the order of the juvenile court.

All concur.